IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| CHRISTOPHER LEE RICHARDSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 16-2666-TMP |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) | |

_____

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**
_____

Before the court is plaintiff Christopher Lee Richardson's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 12.) For the following reasons, the Commissioner's decision is affirmed.

## I. FINDINGS OF FACT

Richardson applied for disability insurance benefits on June 22, 2012 with an alleged onset date of December 1, 2011. (R. 123-32.) The claim was denied initially and on reconsideration. (R. 77-79; 83-84.) At Richardson's request, an Administrative Law Judge ("ALJ") held a hearing and issued a written decision. (R. 8-28.) In his written decision, the ALJ first found that Richardson

had not engaged in substantial gainful activity since the alleged onset date. (R. 13.) Second, the ALJ determined that Richardson had the following severe impairments: obesity, diabetes mellitus, diabetic neuropathy, hypertension, back disorder, degenerative joint disease of the knee, and obstructive sleep apnea. (R. 13.) Third, the ALJ determined Richardson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16.) Fourth, the ALJ determined that Richardson retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) "except he can never climb ladders, ropes, and scaffolds, but he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He cannot work at heights or with dangerous machinery." (R. 16.) The ALJ found that Richardson could not perform past relevant work. (R. 20.) The ALJ also determined that, considering Richardson's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which he could perform. (R. 20.) Thus, the ALJ determined that Richardson was not disabled. (R. 21.) The Social Security Administration's ("SSA") Appeals Council denied Richardson's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1.)

Richardson filed the instant action on August 15, 2016,

seeking reversal or, in the alternative, remand of the Commissioner's decision. (ECF No. 1.) Richardson argues that the ALJ erred by: not including his deep vein thrombosis and gastroparesis/stomach problems as sever impairments in violation of 20 C.F.R. § 404.1520(c); not obtaining testimony or evidence from a vocational expert ("VE"); giving controlling weight to the state agency consultants in making the RFC determination; improperly considering the opinion of Dr. John R. Janovich, his examining specialist; not giving proper consideration to his obesity; and failing to comply with 20 C.F.R. §§ 404.1529 and 404.1545 in evaluating his symptoms and subjective limitations. (ECF No. 13-1 at 1.)

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision.

Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility

determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.  The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1).  Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits.  Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011).  The initial burden is on the claimant to prove she has a disability as defined by the

-5-

Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) &

404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C.  Whether the ALJ Erred at Step Two**

Richardson argues that the ALJ erred by not including his deep vein thrombosis (also referred to as pulmonary embolism) and gastroparesis and stomach problems as severe impairments. (ECF No. 13-1 at 4.) At step two, the ALJ found that Richardson's "medically determinable mental impairment of pulmonary embolism did not impose limitations for a 12-month period and, therefore, did not meet the duration requirement for disability. (R. 14.) Richardson argues that the ALJ erred in assessing his pulmonary embolism for two reasons. First, Richardson argues that the ALJ improperly characterized his pulmonary embolism as a "mental impairment." (ECF No. 13.-1 at 4.) Second, Richardson argues that the ALJ's conclusion that his pulmonary embolism did not impose

limitations for a 12-month period was contrary to the medical records and therefore erroneous.

As to the first argument, the single characterization of Richardson's pulmonary embolism as a "mental" impairment appears to be a mere typographical error and there is no indication how such error warrants reversal. The ALJ made one reference to a "mental impairment" in considering Richardson's pulmonary embolism, but he also concluded that Richardson had "no limiting lung impairment." (R. 14.) The ALJ's consideration of Richardson's pulmonary embolism otherwise included a description of the medical records and treatment history, including computerized tomography scans and pulmonary function tests. (R. 14.) It appears that this characterization may have technically been erroneous, but there is no indication that such error was anything other than harmless. Richardson does not identify how such error would be legally significant, and the court has identified none (for example, the same durational requirement applies either way, <u>see</u> 20 C.F.R. § 416.909). And even if the ALJ improperly characterized his pulmonary embolism as mental rather than physical, Richardson does not specify how the ALJ's analysis would have been different. The court thus declines to disturb the ALJ's opinion based on what appears to be a mere typographical error.

Second, once an ALJ determines that one (or more) of a claimant's impairments is severe, the ALJ considers the

"limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" Kestel v. Comm'r of Soc. Sec., No. 18-3371, 2018 WL 6264400, at *3 (6th Cir. Nov. 29, 2018) (quoting Fisk v. Astrue, 253 F. App'x 580, 583 (6th Cir. 2007; SSR 96–8p, 1996 WL 374184, at *5) (emphasis added in Kestel). Thus, as long as an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two does not constitute reversible error. Id.; see also Fisk, 253 F. App'x at 583; Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).

Here, while the ALJ determined that Richardson's pulmonary embolism was not severe, he also found a variety of other impairments that qualified as severe. (R. 13.) And he went on to consider "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical e4vidence and other evidence" in the remaining steps of the disability determination. (R. 16.) Because the ALJ considered these impairments in the remaining disability analysis, this court need not decide whether the ALJ erred in classifying Richardson's pulmonary embolism as non-severe at step two. See Kestel, 2018 WL 6264400, at *4; Fisk, 253 F. App'x at 584; Maziarz, 837 F.2d at 244. Richardson's argument that the ALJ should have found that his gastroparesis and stomach problems were severe impairments fails

-9-

for the same reason – the ALJ considered these symptoms in making his RFC determination.

**D. Whether the ALJ Erred in Weighing the Medical Opinions**

Richardson next argues the ALJ erred in his RFC determination by not giving proper consideration to the opinion of Dr. Janovich, his examining specialist, but giving controlling weight to the state agency consultants. (ECF No. 13-1 at 10-12.) "[RFC] is defined as 'the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.'" Mokbel-Aljahmi v. Comm'r of Soc. Sec., 732 F. App'x 395, 399 (6th Cir. 2018) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c)). "'In formulating [an RFC], the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions.'" Id. (quoting Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012)); see also 20 C.F.R. § 404.1545(a)(3). In making this determination, the ALJ may consider both objective medical evidence of a severe medical condition, and the credibility of the claimant's subjective complaints. See Steagall v. Comm'r of Soc. Sec., 596 F. App'x 377, 381 (6th Cir. 2015); Schmiedebusch v. Comm'r of Soc. Sec., 536 F. App'x 637, 649 (6th Cir. 2013).

The ALJ considered Dr. Janovich's opinion and assigned it little weight. Dr. Janovich's opinion was based on a one-time

examination. (R. 19.) Accordingly, he is properly characterized as a "nontreating source" who has "examined the claimant but does not have, or did not have, an ongoing treatment relationship with [the claimant]." Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007) (internal quotations omitted). Nontreating sources are not afforded the same level of deference as a treating source. See id.; see also Andres v. Comm'r of Soc. Sec., 733 F. App'x 241, 245 (6th Cir. 2018); Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012). Even so, "as between an examining source and a non-examining source, the examining source will be given more weight." Staymate v. Comm'r of Soc. Sec., 681 F. App'x 462, 467 (6th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(1)). "In addition to this examining relationship, the ALJ may consider 'specialization, consistency, [ ] supportability, ... [and] [o]ther factors which tend to support or contradict the opinion.'" Id. (quoting Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013)); see also 20 C.F.R. § 404.1527(c)(2)–(6).

The ALJ properly considered Dr. Janovich's opinion. The ALJ noted the extent of the examining relationship and considered Dr. Janovich's opinion that Richardson displayed a limited range of motion and diminished sensory perception of the feet with tenderness in the knee in light of the objective medical evidence. Specifically, the ALJ observed that the "minimal clinical findings," including a benign knee x-ray and "negative radiographic

-11-

findings [were] directly inconsistent with the extreme limitations Dr. Janovich assigned." (R. 19.) The ALJ also explained that Dr. Janovich's opinion was inconsistent with Richardson's treating sources' recommendations for increased physical activity and exercise. The ALJ therefore explained his rationale for granting Dr. Janovich's opinion little weight. See Andres, 733 F. App'x at 245; Norris, 461 F. App'x at 439; Staymate, 681 F. App'x at 467. Substantial evidence supports this decision.

The ALJ also assigned great weight to the state agency examiners' opinions. (R. 19-20.) "Generally, an ALJ may rely on a state agency consultant's medical opinion in the same manner that she may rely on other physician opinions." Cogswell ex rel. Cogswell v. Comm'r of Soc. Sec., No. 3:16-cv-2030, 2018 WL 3215721, at *2 (N.D. Ohio July 2, 2018). "Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record." Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 274 (6th Cir. 2015); see also Hoskins v. Comm'r of Soc. Sec., 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."). The ALJ explained why the opinions of the state agency medical consultants were given great weight. Specifically, their opinions regarding Richardson's RFC were "grounded in the evidence in the case record"

and supported by specific reasons. Richardson argues that reversal is warranted because the ALJ was merely "picking and choosing only those parts of the state agency consultant's opinion favorable to a finding of non-disability." (ECF No. 13-1 at 11.) To the contrary, the ALJ properly considered the opinions and gave specific reasons for why he assigned the opinions the weight that he did. Substantial evidence supports this decision. See Reeves, 618 F. App'x at 274; Hoskins, 106 F. App'x at 415.

**E. Whether the ALJ Properly Considered Richardson's Obesity**

Richardson argues that the ALJ's RFC determination failed to account for all the relevant evidence in the case record, including his obesity. (ECF No. 13-1 at 12-14.) An ALJ is required to consider obesity at steps two through five of the sequential evaluation process when determining if an individual is disabled. SSR 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002); see also Dutkiewicz v. Comm'r of Soc. Sec., 663 F. App'x 430, 432 (6th Cir. 2016). However, this ruling "'does not mandate a particular mode of analysis,'" it merely "directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009) (quoting Bledsoe v. Barnhart, 165 F. App'x 408, 411–12 (6th Cir. 2006)). "The ALJ satisfies this requirement so long as she credits 'RFCs from physicians who explicitly accounted for [the claimant's] obesity.'" Miller v.

-13-

Comm'r of Soc. Sec., 811 F.3d 825, 835 (6th Cir. 2016) (quoting Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 443 (6th Cir. 2010); see also Shilo v. Comm'r of Soc. Sec., 600 F. App'x 956, 959 (6th Cir. 2015) (holding that obesity "must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity'" (quoting SSR 02-1p, 2002 WL 34686281, at *1)). Even so, an ALJ may not presume that obesity is a curable impairment and may not deny a claim based upon a claimant's failure to lose weight unless weight loss treatment was prescribed, rather than merely suggested, and the treatment would restore the claimant's ability to work. Banham v. Astrue, No. 1:08CV2886, 2010 WL 55975, at *6 (N.D. Ohio Jan. 5, 2010) (citing Johnson v. Secretary of H.H.S., 794 F.2d 1106, 1113 (6th Cir. 1986); Harris v. Heckler, 756 F.2d 431, 435, n.2 (6th Cir. 1985); Sayers v. Gardner, 380 F.2d 940, 953 (6th Cir. 1967)).

The ALJ properly considered Richardson's obesity in making his RFC determination. Richardson argues that the ALJ improperly considered his obesity because he referenced Richardson's failure to follow his physicians' repeated advice to lose weight and exercise more. But the ALJ's consideration of Richardson's obesity was not so limited. The ALJ specifically noted that Richardson's obesity was a severe impairment that complicated his diabetes, degenerative joint disease, sleep apnea, and hypertension. (R. 19.) The ALJ reviewed the objective medical evidence and found

that the obesity indeed restricted Richardson from "performing many of the postural activities as his mobility would reasonably be limited." (R. 19.) And the ALJ accounted for these additional postural limitations in his RFC determination. (R. 16.) Such analysis complies with SSR 02-1p. See Miller, 811 F.3d at 835; Shilo, 600 F. App'x at 959. The ALJ's further description of Richardson's failure to comply with his doctor's recommendations was limited to a consideration of his credibility. The ALJ thus did not commit reversible error by merely noting that the record failed to indicate that Richardson had followed his doctor's advice in this context.

**F.  Whether the ALJ Properly Considered Richardson's Medication Side Effects**

Richardson argues that the ALJ "failed to take into consideration the side effects of [his] medications in violation of 20 C.F.R. § 404.1545." (ECF NO. 13-1 at 14.) In making the RFC determination, the ALJ must consider "all the relevant evidence." 20 C.F.R. § 404.1545(a)(1). This includes both a claimant's subjective complaints and statements regarding his symptoms and the objective medical evidence. 20 C.F.R. § 404.1529(a). Richardson essentially submits a summary of his testimony regarding his medications and side effects. (ECF NO. 13-1 at 14-16.) He also argues the ALJ's finding that his gastrointestinal problems caused no more than minimal work-related limitations is inconsistent with Richardson's repeated emergency room visits. And he takes issue

with the ALJ relying on medical treatment records indicating Richardson could "resume normal activities as tolerated" and encouraging him to "be as active as possible" because such phrases leave the amount of activity to be performed up to Richardson. (Id. at 16.) Other than identifying his own testimony and these minor discrepancies, however, Richardson does not identify objective medical evidence that supports his contentions regarding his medications and side effects. "An ALJ is not required to find that a claimant's alleged medication side effects impact his functioning if those side effects are not part of the record." Byrge v. Astrue, No. 3:10-CV-129, 2011 WL 887670, at *6 (citing Essary v. Comm'r of Soc. Sec., 114 F. App'x 662, 665 (6th Cir. 2004)). Furthermore, to the extent that Richardson argues that the ALJ should have given more credit to his subjective complaints, the determination of credibility rests with the ALJ and, in any event, Richardson has not cited objective medical evidence that supports his allegations. See Hopkins v. Comm'r of Soc. Sec., 96 F. App'x 393, 395 (6th Cir. 2004); Reed v. Berryhill, No. 3:16-CV-822, 2018 WL 558824, at *4 (M.D. Tenn. Jan. 25, 2018); Horning v. Comm'r of Soc. Sec., No. 14-11723, 2015 WL 4771440, at *11 (E.D. Mich. Aug. 14, 2015). The ALJ considered Richardson's statements and testimony as to his symptoms, medication, and side effects, and weighed such statements against the objective medical evidence

contained in the record.  Accordingly, no error is apparent and substantial evidence otherwise supports the ALJ's decision.

**G. Whether the ALJ's Reliance on the Medical-Vocational Guidelines was Appropriate**

Richardson finally argues that the ALJ erred by relying on the Medical-Vocational guidelines (the "grids") at step five and should have instead called a VE to testify. (ECF No. 13-1 at 7-10.) "At step five of the sequential analysis, the Commissioner carries the burden of proving the availability of jobs in the national economy that a claimant is capable of performing." Strimel v. Berryhill, No. 2:16-cv-226, 2017 WL 4127610, at *7 (E.D. Tenn. Sep. 15, 2017). "The Commissioner can accomplish this by employing the grids found at 20 C.F.R. Pt. 404, Subpt. P, App. 2." Amir v. Comm'r of Soc. Sec., 705 F. App'x 443, 451 (6th Cir. 2017). "The grids are composed of rules which specify whether a claimant will be found disabled or not through a particular combination of four factors: exertional capacity, age, education, and previous work experience." Id.  Generally, "where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the Grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform."[1]

---

[1] Exertional limitations are limitations on a person's ability to meet the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling at the level required by the level of work at issue. 20 C.F.R § 404.1569a(b).  Non-

Jordan v. Comm'r of Soc. Sec., 548 F.3d 417, 424 (6th Cir. 2008) (citing Burton v. Sec'y of Health & Human Servs., 893 F.2d 821, 822 (6th Cir. 1990)). "The Commissioner may meet his burden at step five by referring to the Grids unless the claimant has a 'nonexertional limitation[ ] that significantly limit[s] the range of work permitted by his exertional limitations.'" Collins v. Comm'r of Soc. Sec., 357 F. App'x 663, 670 (6th Cir. 2009) (quoting Cole v. Sec'y of Health & Hum. Servs., 820 F.2d 768, 771 (6th Cir. 1987)); see also Maze v. Colvin, No. 16-cv-1138, 2018 WL 3599968, at *6 (W.D. Tenn. July 27, 2018) ("[T]he ALJ [properly] treated the grids as requiring him to find [the claimant] not disabled . . . because the nonexertional limitations the ALJ found [the claimant] to possess did not 'significantly limit the range of work permitted by [her] exertional limitations[.]'" (quoting Collins, 357 F. App'x at 670)); Strimel, 2017 WL 4127610, at *7-8 ("An allegation of a nonexertional limit is insufficient to eliminate the grids as an option; rather the key factor is 'whether the alleged impairment is severe enough to alter the conclusion that the claimant could do a full range of work at the specified level.'" (quoting Cole, 820 F.2d at 772)).

---

exertional limitations affect a person's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands. 20 C.F.R § 404.1569a(c).

The ALJ here concluded that given his RFC, Richardson could perform the full range of light work despite his safety and postural limitations. (R. 16.) The ALJ specifically found that his additional limitations had little or no effect on the occupational base of unskilled light work. (R. 16.) The Social Security Regulations establish that certain nonexertional limitations or restrictions have very little or no effect on the unskilled light occupational base including: the inability to ascend or descend scaffolding, poles, and ropes; the inability to crawl on hands and knees; and the inability to use the finger tips to sense the temperature or texture of an object. SSR 83-14, 1983 WL 31254, at *5 (Jan. 1, 1983). The ALJ's RFC determination includes exactly such nonexertional impairments: Richardson is restricted from climbing ladders, ropes, and scaffolds, but he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and cannot work at heights or with dangerous machinery. (R. 16.) As explained above, the RFC determination was supported by substantial evidence. The RFC includes only nonexertional impairments that have little or no effect on the unskilled light occupational base. Because such nonexertional impairments do not significantly limit the range of work permitted by Richardson's exertional limitations, the ALJ was within his discretion to rely solely on the grids instead of calling a VE to testify. See Collins, 357 F. App'x at 670; Cole, 820 F.2d at 771); Maze, 2018 WL

3599968, at *6. The ALJ thereafter used the Dictionary of Occupational Titles to identify jobs that Richardson could do. See Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 713 (6th Cir. 2013) ("the Dictionary is the only source that can be used to assess the availability of jobs"). Accordingly, the ALJ properly found that Richardson's RFC allowed him to perform a significant number of jobs existing in the national economy.

### III. CONCLUSION

For these reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

March 21, 2019
Date